greetings this is the time set for the argument and a consolidated group of cases Portillo-Flores v. Barr, Enrique Perez v. Barr and Gonzales Ponce v. Barr as you've undoubtedly noticed unfortunately Judge Berzon had her internet go down today so she's participating by phone and that was the reason for our delay we were hoping that Comcast would would be able to restore service so but these things happen over video and we appreciate your patience with us so Mr. Kaufman you may proceed my name is Andrew Kaufman representing the petitioners and I just like to say I'm happy to be here today and it's an honor for me to be able to argue this case in front of such an esteemed panel of judges I don't see the clock but I would like to reserve five minutes for I'll try to help you with that now I know there was an issue with a motion to terminate based on some deficiencies in the notice to appear but I but the respondent the Attorney General has filed some 28j motions discussing intervening case law and I think the petitioners will concede that the that motion to terminate is is a moot because of the intervening case law so I will proceed directly to discussing the motion to suppress yes I do okay so the kind of overarching argument that petitioners want to make is that the agency the immigration judge and the Board of Immigration Appeals aired by not holding an evidentiary hearing the type of hearing that's described in matter of Barsanis on their claim that the there was an unconstitutional arrest in each case and that the the form I 213 that was admitted into the record as evidence of their alien age and deportability that it was it should have been suppressed because it was the fruit of additional arrest so that's the the biggest point is I think that the judge and the BIA aired by not holding that hearing petitioners are arguing that the they did allege a primal fascia unconstitutional arrest and in order to get there I think that a very important question that the court has to answer is if the petitioners can successfully rebut the presumption of reliability of an i-213 because an i-213 is the ordinary circumstances presumed to be inherently trustworthy but if the petitioners can successfully rebut that presumed reliability of the i-213 would that necessarily lead to the conclusion there was an unconstitutional arrest and I think the answer to that question is yes but it's going to take a couple of steps to get there and that's what I want to talk about but again if if they can we haven't gotten I will argue that they have successfully rebutted it but that's a second point but just the first question if they can rebut that presumed reliability does that lead to the conclusion that the arrest was on unconstitutional and so at first I'd like to just explain why I think it would lead to that conclusion I know I'm wondering why you're assuming that in looking at the Sanchez opinion which deals with a closely related issue and it says that the government has yet to offer specific and articulable facts which would support the Coast Guard officers decision to detain Sanchez on the basis of reasonable suspicion so that doesn't that suggest that it is the well so that's the rule in criminal cases for a warrantless arrest right well so there are you talking about the authority to detain someone to stop them for questioning or the authority to arrest I'm talking about the arrest and I'm saying that I'm not sure that I understand that the BIA's position including the opinion that you cited is that the petitioner has the burden but ordinarily in a criminal case if there's a motion that is suppressed in a warrantless arrest the government has to come forward but so what the what the the probable cause is and so why don't they have to do that here Sanchez used to assume they do have to do it here so there's there's there's a couple of different competing burdens that I think are at work here just on the question of a motion to suppress there is this case law that says it's it's the the petitioners burden to show unconstitutionality and then if they if prima facie showing of unconstitutionality then that would cause there to be an evidentiary hearing on the unconstitutionality and then if if if a judge finds that it was unconstitutional the evidence would be suppressed and if after that hearing the judge finds a fact that it wasn't unconstitutional then the motion would be denied so I think the petitioners because they're making this motion I would I would concede that they have some burden but I think that they've they've met that burden but but another way of looking at this is that anytime there's an arrest the fourth amendment to the Constitution presumes that the arrest is unlawful unless there's a warrant or unless there's probable cause or unless there's a statute that authorizes the arrest so we know there was an arrest and so there should be some explanation of why there was justification for the arrest is government agents can't just arrest someone for no reason that's what the fourth amendment is all about but in this case they they submitted evidence that they had justification they submitted a form i-213 and in the i-213 it says some anonymous border patrol agent determined that the petitioners were aliens and that they had unlawfully entered the United States now if that is true if a border patrol agent did determine alienage and unlawful entry prior to arresting the petitioners then the border patrol agent was authorized to arrest the petitioners under the statute INA section 287 it says if an officer has reason to believe that someone is is an alien illegally in the United States they have authorization to arrest them so so that that claim in the i-213 is very important it says the officer is saying a determination was made and if you believe the i-213 that a determination was made of alien age and unlawful entry the arrest was constitutional but I'm going to argue that you shouldn't believe that a determination was made just because it says so in the i-213 or under ordinary circumstances that i-213 is is entitled to a presumption of trustworthiness that's what this court's decision in Espinoza which is cited in all of the briefs it says that there's a presumption of trust trustworthiness of the i-213 but if if the petitioners can call into doubt that form i-213 if they can materially contradict anything that that's in that i-213 then it then it it passed out on the entirety of the form and does it matter that the i-213 has absolutely no specificity as I say Sanchez says the government has yet to offer specific and articulable facts that would support the Coast Guard's decision to detain him I doesn't sound to me like he to turn the fact that he determined this is a specific and articulable fact it's not a fact at all simply a statement that he did it but it doesn't say how he did it or why he did it or what the facts were or anything like that your suggestion that that simply because they said that you now have to proceed to show that the i-213 was questionable rather than saying well I just haven't met their burden at all they haven't shown anything yes your itself has instructions on the on the first page that say that the officer should should include in the narrative section the particulars and the details underlying the decision to arrest someone and so when they just put well I determined that they were an alien I determined that they had illegally entered the United States trust me because I'm entitled to a presumption of trustworthiness that that presumption is is doing a lot of heavy lifting at that all the form says is I encountered this person near the border and I determined that they had entered illegally but the petitioners in each of these cases have said they weren't questioned they weren't questioned at all they weren't questioned regarding their country of birth their citizenship status how they enter the United States no identity documents were taken from them so I would say that under those circumstances the the i-213 is insufficient to get a to get suppression in the immigration context we need more than a fourth amendment you need an egregious fourth amendment violence so on the facts in this record what is it what's the egregiousness okay so if it again if the petitioners rebut the presumed reliability of the i-213 then that statement that in that an officer determined their alien age and therefore had justification to arrest the petitioners that goes away and now there's no longer any evidence in the record that there that there was any justification for the arrest if there was no justification for the arrest we just have this this you know arrest with no justification that's a fourth amendment violation and and right suppression to get suppression you have to to articulate a prima facie case of an egregious fourth amendment violation so I just don't see on this record just humor me for a minute I just don't see on this record the kind of egregious acts that we've held constitute a egregious fourth amendment violation in this context so help me out with them yes your honor so an egregious violation is defined as a violation that an officer knows or should know violates the Constitution or is illegal so if this officer knew that he or she was was was making an illegal arrest then that would be an egregious violation because it's it's an unconstitutional arrest it violates the Fourth Amendment there's it's an arrest without proper authorization under the act and the officer knows that they don't have authorization the officer knows that they haven't spoken with this person that they they haven't articulated any details any reason for making the arrest really that the egregiousness would be open on me that that they didn't get to egregiousness because they simply said that they were you know no more specificity was necessary and that you would and what you would do on this record we do it you would send it back and you'd say all right if they want to bring somebody in and say what they actually knew then we can decide what thank you your honor so I was trying to make the point before the break that what we have in each of these two thirteens are specific articulable facts to show that the Border Patrol had recent suspicion of alienage I pointed in order to do that and maybe we have some reason to believe this we have to assume that this is what the officer saw rather than what she told him right we know some of what's in here is what we told him that we saw because I dispute that for this reason I think it's very unlikely that the petitioner would have by raft well so you're suggesting that we should take this to me that he saw her on the raft I think that's that's certainly the case here because I think how would how would this petitioner know was 2.71 miles east of Hilda you wouldn't know that but you know if she was on the raft well she would know that she's on right but but my point is that that type of specificity shows that that that only came from the Border Patrol so he's indicating here that her last entry was 2.7 miles that 2.71 east of Hidalgo and raft and he arrested her just a half hour later on the right side of the page it says the date hour of arrest November 19 2015 at age 15 and it says status of entry present without admission and traveling see and at length of time illegally in the United States at entry I also want to take the court to page 111 of the Gonzales Ponce record where it shows the 213 and very similar thing here it says that this individual came in 0.3 miles east of Hidalgo by raft and they were arrested just an hour after the entry that's on page 111 of that record and then we have the Enriquez record which shows that the individual is arrested 384 feet into the country and was in a field at 1130 at night walking with a small child near a it's reasonable for an officer to see that and to think this person is not lawfully in the country and they had the absolute right to detain them pursuant to a dressy 1357 a2 they definitely yes but as I said this is not cases as I understand it not really about detention it's about the arrest because they were then arrested and she said that she didn't tell them before the arrest anything about her nationality or her name or anything else so I think you're right about the detention based on what's on the record but the question is why are you right about the arrest why am I right about it in what sense your proper because the arrest has a higher standard right well I think it's just reasonable belief if you look at a USC 1357 reasonably which we have understood we have held means probable cause I'm not sure where you've held it at the 813 57 standard means probable cause I believe that to be the case but okay so we start with we started going down this path with the distinctions between what happened in Sanchez in here and I think given that all three of these aliens were arrested 1,000 feet from within 1,000 feet of the border in well-known routes where pit individuals come into the United States either through rafting through the Rio Grande or Calexico California where Henrique's was it was arrested I think it's quite different than the situation in Hidalgo where he alleged that it was because of his race and this occurred 300 miles from the nearest border in Oxnard California in territorial waters not which are not normally a route for aliens to take to come in the United States it was certainly not in compared to traveling across the Rio Grande or coming in through Calexico California so I think there's there's an enormous difference between the facts in this case and the facts in in Sanchez I turn to another issue sure as I understand mr. Kaufman's argument he said he's basically indicating that anytime a 213 is controverted by an my response to that is I think he's kind of turning that the facts around because it was it was their decision whether it's mr. Kaufman himself or the attorney that was at the immigration level it might have been Jonathan Kaufman it was their decision not to put the individual on the stand to bolster the testimony in their declarations that they filed with the immigration judge they could have had them come up there and say and testify under oath that no I was never asked about my alien age before my arrest and they could have testified to whatever detention conditions existed that they thought caused them to involuntarily make admissions but they chose not to do that it wasn't that the immigration judge determined we're not going to have a hearing it's it they had the the petitioner had the absolute ability to have that testimony come out in court and that's kind of what matter of bar saying us the board decision says is that if you're going to show a prima facie case of an egregious violation you can't just do that through a declaration you have to bolster that with testimony and you have to have the ability to for DHS to cross-examine the witness to test their story before the burden would shift to DHS to show the specific articulable facts that justified their arrest and by the way the case about probable causes to sheet a model versus I am at 26 seconds every 21 but leaving what what the officer knew before you stopped her and then arrested her in other words let's take the raft for a thing how is she supposed to know whether it's all in Iraq or not yeah I'm not sure that she has a need to know what what the officer knew or didn't I'm sorry I missed that your honor and captain she alleged that there wasn't probable cause a reasonable belief or how can she say the question is what depends on what the arresting officer knew and how does she know what the arresting officer knew what he doesn't have to put some kind of faxing about what he knew right so I think that question actually in Earth's in favor of the government because how could she know what what the officer knew knew you know that for all we know the officers was watching binoculars as she as she entered the raft but but he doesn't know what he knew so he could write down right which and that's what I'm trying to say here because in this in this in this 213 not only does he say that they came in by raft and we could debate over whether he knew that or the alien knew that but I severely doubt that the alien knew that it was exactly 3.71 miles away but but also I point to page 106 of the Portillo record which shows that the Border Patrol wrote down that he determined that the subject had unlawfully entered the United States yes but the point may I ask the question because I'm confused because we're arguing three different cases at the the raft is that in all three no it's in the raft evidence is in the Portillo case and what at AR 104 and the Gonzales case at 111 both of those were rafts and again both showed that they were arrested within a very short time after after their entry the time and the timestamp of their entry and then you have the left latitude and longitude GPS coordinates of each of the cases now the Enriquez case was not by raft that was by foot and the officer indicated pardon me for jumping out of the screen for a minute the officer indicated that the entry of this miss Enriquez occurred at 1115 at night 11 miles west of Calexico by foot now there's no way that the petitioner knew that there was 11 miles west of Calexico but that's what the officer must have observed and he arrested her just 10 minutes later if you look at page 186 I am at the Enriquez record he arrested her 10 minutes later at 1125 at night in an area 385 feet from the border in the middle of a field of solar panels he we do say in this opinion that you don't know about that the phrase has reason to believe has been equated with the constitutional requirement of probable cause so the question is has probable cause if that's all there is is that probable cause to arrest you the government submitted is your honor given the GPS coordinates the time they were seen coming in the country the time at night that an individual was walking with a minor less than five years old I think in that case it was one the minor was one years old if I'm not mistaken the two cases I think all those things given that these are on routes that are commonly used by aliens to come into the country unlike the case in Sanchez I think all those factors the the method of entry the time at night the latitude longitude coordinates and the fact that it's on a route that tip is typically used for aliens to come in the country from Mexico those are all factors that give the agent probable cause certainly reasonable suspicion and I'll take you know the your honor's case to mean that you need probable cause and still satisfied in this particular case so yes I'm sorry your time has expired but I want to make sure any further questions from the panel okay thanks for your argument thank you now is mr. Kaufman back on oh I assume you stopped your video just to band with it or were you off I was here I was listening your honor I just I wasn't sure if if I should be on the video the whole time or not okay no problem you have five minutes for a vote okay so okay well there's two things that I would like to dress that were that were just discussed one is this issue about whether or not the petitioners two of them at least were observed entering on a raft there's nothing in the i-213s that say they were observed entering on a raft there's some when that information was was gathered or whether or not the officer relied on that information as justification for arresting the petitioners we're still we still go back to this presumption that just because something is put on an on a form i-213 that we're supposed to presume that it's true and counsel for bigger is bigger issue is that we know that some of what's on that i-213 is information you learn from her later because it says that but she said this and she said that so that's the question about the raft thing I don't think it's a question whether you believe it or not the question is when did he know yes I I would I would argue that well one yes we don't we don't know what the officer knew at the time of the arrest and it's not clear from the i-213 I think that that opposing counsel just said well the officer must have observed the petitioner but that's that's being very generous that's that's that's that's assuming that the officer did something properly but when the petitioners are calling in question the reliability of this form and the reliability of every statement made in the form then that that shifts the requirement back to holding a Barcenas hearing and deciding the facts and that brings me to another issue that I want to to discuss or another thing I want to take issue with the fact that the the petitioners once their motion to denied and once the judge said that there would be no matter of Barcenas hearing and we're going forward with a removal and the judges has found all of the petitioners removable as charged at that point there was no point in the removal hearing to try to re-litigate the motion to suppress so they asked for the opportunity to cross-examine the officer or to testify about what happened and the judge said no the judge in each case denied them and and I think that was a big error I think the BIA erred by by not allowing that so again whether whether the officer says I personally observed them entering on a raft or whether the officer says something more general like I determined that this person was an alien who illegally entered the United States if you credit that is true then that is justification for an arrest but the big question is are we going to credit that statement as being true and there is a myriad different inconsistencies that the each petitioner has raised with their particular i-213 and that's in the opening briefs I I came prepared to me to discuss the details of every little inconsistency in the i-213 there's a lot of them oh yeah but I if I understood your position and in your briefs it was that all the relevant in the in the 213 was that she was arrested after he determined and there wasn't anything sufficient and the as to what what was the basis of which he had determined that she was illegally here I looking at the tooth now you say that the 213 says this is the Portillo case she was seen on the raft I I am having trouble given the light and the computer that I am looking at trying to figure out where that information is it's it's near the top left-hand corner on the first page the i-213 it doesn't say observed on a raft it says manner of entry by raft and it's not clear when that information was was ascertained or if the officer relied on that information in order to arrest they really don't provide their their reason other than just saying the they're relying very heavily on a presumption that we're going to trust that they did make that determination and I don't think that they when when so many factors have been called in a question about the i-213 the i-213s in each case say that they were advised of their administrative rights in removal proceedings in one at least one of the cases they say that they advised a four-year-old child of his administrative rights in removal proceedings and he acknowledged understanding those rights that's just an absurd statement there's many statements like that that are pointed out in the opening briefs where the i-213s just use boilerplate language and they say things that are demonstrably not true so if they're sloppily done and then they they they want to say oh trust me I made a determination of aliens but I'm not going to tell you how I made that determination because I'm entitled to a magical presumption of trustworthiness so trust me the determination was made I don't think that they should be trusted in this case I think that that's what a matter of per se in this hearing is all about we can we can once it's contested and once some material inconsistencies are pointed out in the i-213 there should be an evidentiary hearing the IJ skipped that and said now I don't need to do that well I think that the IJ abused discretion by skipping that very good you're a little over your time but thank you for both of you for your efficient presentations worry about the technical difficulties and the case just are going to be submitted for decision thank you
judges: Schroeder, Thomas, Berzon